UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Nathan K.,[1]

       Plaintiff,

v().

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

23-CV-0407-LJV
DECISION & ORDER

_____

       On May 9, 2023, the plaintiff, Nathan K. ("Nathan"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On August 7, 2023, Nathan moved for judgment on the pleadings, Docket Item 5; on August 31, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on September 14, 2023, Nathan replied, Docket Item 8.

---

      [1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

      [2] Nathan applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Nathan's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   **THE ALJ'S DECISION**

On August 30, 2022, the ALJ found that Nathan had not been under a disability since his alleged onset date of February 25, 2020. *See* Docket Item 3 at 20-21. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 21-22.

At step one, the ALJ found that Nathan had not engaged in substantial gainful activity since his alleged onset date. Docket Item 3 at 22. At step two, the ALJ found that Nathan suffered from four severe, medically determinable impairments: "PTSD [Post-traumatic Stress Disorder], bi[]polar disorder, degenerative lumbar disc disease[,] and left wrist fracture." *Id.*

At step three, the ALJ found that Nathan's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 23-25. More specifically, the ALJ found that Nathan's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or 1.18 (abnormality of a

3

major joint in any extremity).  Likewise, the ALJ found that Nathan's mental impairments did not meet or medically equal listing 12.06 (anxiety related disorders) or 12.15 (depressive, bipolar, or related disorders).  *Id.* at 24.  In assessing Nathan's mental impairments, the ALJ found that Nathan was moderately impaired in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  *Id.*

The ALJ then found that Nathan had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 404.1567(b)" except that:

> [Nathan] can sit, stand[,] and walk six hours in an eight hour workday; he can occasionally climb ramps [and] stairs[,] but never ladders, ropes[,] and scaffolds; he can occasionally balance, stoop, kneel[,] and crouch[,] but no[t] crawl[;] he can frequently handle [and] finger with [his] left hand; he cannot be exposed to hazards such as unprotected heights[,] . . . moving machinery[,] and excessive vibration; he is limited to simple[,] routine tasks; he will be off task 5% of the day in addition to breaks; he can have no more than occasional interaction with coworkers and no team work; [he can have only] superficial interaction with the public; [he] cannot be required to independently develop work strategies or identify workplace needs; and[] he cannot operate a motor vehicle.

*Id.* at 25.

At step four, the ALJ found that Nathan no longer could perform any past relevant work.  *Id.* at 29.  But given Nathan's age, education, and RFC, the ALJ found at step five that Nathan could perform substantial gainful activity as a cleaner, laundry worker, or polisher.  *Id.* at 29-30; *see Dictionary of Occupational Titles* 323.687-014,

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

1991 WL 672783 (Jan. 1, 2016); *id.* at 302.685-010, 1991 WL 672657 (Jan. 1, 2016); *id.* at 709.687-010, 1991 WL 679134 (Jan. 1, 2016).  Therefore, the ALJ found that Nathan had not been "under a disability . . . from February 25, 2020, through the date of this decision," August 30, 2022.  *See* Docket Item 3 at 31.

II.     **ALLEGATIONS**

Nathan argues that the ALJ erred in three ways.  Docket Item 5-1 at 1.  First, he argues that the ALJ "failed to explain why he did not incorporate [the] moderate limitations" found by Christine Ransom, Ph.D., "into the RFC" despite finding Dr. Ransom's opinion "to be persuasive."  *Id.* at 16.  Second, Nathan argues that "[t]he physical RFC is not supported by substantial evidence[] because the ALJ did not analyze the . . . functional capacity evaluation pursuant to the regulatory factors."  *Id.* at 22.  Finally, Nathan argues that the ALJ "crafted a highly[ ]specific RFC" but "failed to explain how he arrived at the specific limitations contained within the RFC."  *Id.* at 27.  This Court agrees that the ALJ erred and, because that error was to Nathan's prejudice, remands the matter to the Commissioner.

III.    **ANALYSIS**

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence."  SSR 96-8p, 1996 WL 374184, at *7.  When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence support[s] his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review."  *Gorny v. Comm'r of Soc. Sec.,* 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

5

If an ALJ includes a "highly[ ]specific" limitation in the claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill,* 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018). In other words, when the medical evidence and opinions suggest certain specific limitations, the ALJ cannot make up less-restrictive specific limitations. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998). So when the medical evidence suggests a specific amount of time that a claimant will be off task and there is no medical evidence suggesting a different specific time, a finding that a claimant will be off task for a specific time less than that is not supported by substantial evidence. *Cf. Tomicki,* 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option . . .. Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

For example, in *Elder v. Comm'r of Soc. Sec.,* 2019 WL 6320355, at *5 (W.D.N.Y. Nov. 26, 2019), this Court remanded because "nothing in the record support[ed] the ALJ's specific RFC determination that Elder would be off task for no more than 'five minutes . . . per hour.'" Likewise, in *Tara W. v. Comm'r of Soc. Sec.,* 2021 WL 4316824 (W.D.N.Y. Sep. 23, 2021), this Court remanded when the ALJ found that the "[p]laintiff can be off task 5% of the day" but "failed to explain *where* that specific percentage of 5% came from, or why he assessed that percentage as opposed to one higher or lower . . .." 2021 WL 4316824, at *3 (emphasis in original) (citing *Mariani v. Colvin,* 567 F. App'x 8, 10 (2d Cir. 2014) (summary order)); *see also Wouters v. Comm'r of Soc. Sec.,* 2020 WL 2213896, at *3 (W.D.N.Y. May 7, 2020) (remanding where ALJ

6

did not "point to any evidence in the record suggesting why [the p]laintiff would be off-task for [5% of the] time."); *Annis v. Comm'r of Soc. Sec.,* 2019 WL 6875231, at *10 (W.D.N.Y. Dec. 17, 2019) (ALJ did not have "good reasons" to support specific mental RFC determination that plaintiff would be off task for no more than 5% of the workday).

Here, the ALJ's specific finding that Nathan "will be off task 5% of the day in addition to breaks," Docket Item 3 at 25, does not come from anywhere in the medical record and therefore is not supported by substantial evidence. The ALJ did not explain why he chose 5% of the workday as opposed to, say, 3% or 10% or 15%. *Cf. Raimon H. v. Comm'r of Soc. Sec.,* 2024 WL 4448900, at *3 (W.D.N.Y. Oct. 9, 2024) ("The reason for remand is the lack of any specific evidence to support that [p]laintiff would be off-task only 5% of the workday.  In other words, there is no explanation as to why 5% as opposed to 10% or 15% or 18%[.]").  As this Court has repeatedly held, that was error.

In an effort to suggest otherwise, the Commissioner argues that "by incorporating a 5% off-task limitation into [Nathan's] RFC, the ALJ's finding was more restrictive than what is supported by the medical opinion evidence"; the Commissioner says that "courts have found no error" under such circumstances.  Docket Item 7-1 at 18.  But as the ALJ himself acknowledged, *see* Docket Item 3 at 29, Nathan's treating physician, John Wickett, D. O., found that Nathan would be off task more than 30% of the time due to his mental impairments.  Docket Item 4 at 1024.  So in contrast to the cited cases—where the ALJ's specific finding was not error because it was more generous to the claimant than any medical provider opined, *see, e.g., Lesanti v. Comm'r of Soc. Sec.,* 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020)—here the opinion of a treating provider

7

included a greater limitation. *Julie B.-Z. v. Comm'r of Soc. Sec.,* 2024 WL 1331187, at *4 (W.D.N.Y. Mar. 28, 2024) ("[i]f a physician opines that a claimant will be off task 20% of the time and the ALJ rejects that opinion, the ALJ cannot simply pick a smaller percentage—say 12% or 7% or 5%—based on the ALJ's own lay judgment").[5] And

---

[5] At the hearing, the ALJ used the 5% off-task limitation to pose a hypothetical to the vocational expert, *see* Docket Item 3 at 80, and the vocational expert responded that such a limitation would not be disabling, *see id*. at 81-82. Based on that testimony, *see id*. at 30-31, the ALJ found that there were jobs in the national economy that Nathan could perform. *See McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion [and the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." (internal quotations and citation omitted)). But as noted above, the ALJ never explained why he chose 5%, and there is no evidence in the record to support the hypothetical question. And "[a] [vocational expert's] response to a hypothetical posed by the ALJ that is not supported by any evidence is not substantial evidence accurately reflecting the limitations and capabilities of the [p]laintiff." *Michele D. v. Kijakazi,* 2022 WL 2900776, at *5 (W.D.N.Y. Jul. 22, 2022) (citations omitted); *see Cosnyka v. Colvin,* 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) ("[b]ecause there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the plaintiff] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits"); *Young v. Barnhart,* 362 F.3d 995, 1004 (7th Cir. 2004) ("For all of the same reasons that the RFC fell short, the hypothetical question, which was based entirely on that RFC[,] did as well.").

The ALJ also asked the vocational expert whether someone who would be off task about 20% of the workday would be able to perform the suggested jobs, and the vocational expert responded that such time off task would be "unacceptable for . . . substantial gainful employment." *Id.* at 83. Therefore, Dr. Wickett's opinion—that Nathan would be off task more than 30% of the time—would make Nathan disabled. And while the ALJ could reject that opinion, he could not then come up with a lesser limitation on his own and without record support.

Given all that, "[a]t best, . . . the ALJ's conclusion c[ame] from whole cloth" and "[a]t worse, [it] respond[ed] to the vocational expert's testimony" that more time off task would mean that Nathan could not perform the work that the RFC found he could. *See Elder,* 2019 WL 6320355, at *6; *Annis,* 2019 WL 5875231, at *11.

while the ALJ can and did reject that opinion, he cannot then create some lesser limitation on his own and without support in the record.

In sum, the ALJ erred in formulating a specific RFC limitation that was not supported by the record, and that error was not harmless. *Michelle A. v. Saul,* 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("[t]he ALJ cites to no evidence in the record, medical or otherwise, suggesting that plaintiff would be off[ ]task for this specific percentage of time). Without a "tether" between the specific time off task and the medical evidence, *Jordan v. Berryhill,* 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018), this Court cannot find that limitation to be supported by substantial evidence. On remand, the ALJ must fashion an RFC that is based on evidence in the record and not on his own surmise. *See Tara W.,* 2021 WL 4316824, at *4.[6]

---

[6] The Court "will not reach the remaining issues raised by [Nathan] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020).

9

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 7, is DENIED, and Nathan's motion for judgment on the pleadings, Docket Item 5, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 18, 2025
        Buffalo, New York

                                             *Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE